

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 31, 2023**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-30032-sgj |
| **HIGGINS AG, LLC** | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER UNDER 11 U.S.C. § 1191 CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION

WHEREAS, on April 3, 2023, Higgins AG, LLC ("Debtor"), debtor and debtor-in-possession in the above referenced bankruptcy case, filed its Plan of Reorganization [Docket No. 36] (the "Original Plan," and collectively with all amendments and modifications thereto, the "Plan")[1]; and

WHEREAS, on April 5, 2023, in accordance with the Court's Order Setting Plan Related Deadlines and Hearing on Confirmation (Small Business Debtor-Subchapter V) [Docket No. 37]

---

[1] Unless otherwise defined in this Order, capitalized terms used herein have the meanings ascribed to them in the Amended Plan of Reorganization [Docket No. 40].

(the "Confirmation Scheduling Order"), the Debtor caused the Original Plan, the Confirmation Scheduling Order, and a ballot for voting to accept or reject the Plan (collectively, the "Solicitation Package") to be transmitted to holders of Claims in all Classes listed in the Plan and all parties-in-interest in this case;

WHEREAS, on May 14, 2023, the Debtor filed its Amended Plan of Reorganization [Docket No. 40] (the "Amended Plan") and served notice of filing of the same on May 14, 2023, to all creditors of the Debtor and parties-in-interest in this case.

WHEREAS, pursuant to 11 U.S.C. § 1128(a), the Court held a hearing on May 25, 2023, to consider confirmation of the Plan (the "Confirmation Hearing"); and

NOW, THEREFORE, based upon the Court's review and consideration of (i) the submissions previously filed with the Court; (ii) the record of the Confirmation Hearing (including all of the evidence proffered or adduced at the hearings, pleadings, and other submissions filed in connection therewith, and the arguments of counsel made at the hearing); and (iii) the record in the above-captioned case (the "Bankruptcy Case"); and after due deliberation thereon, and good cause appearing therefore,

**THE COURT FINDS AND CONCLUDES THAT:[2]**

A.    <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Fed. R. Bankr. P. 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

B.      <u>Jurisdiction, Venue, Core Proceeding - 28 U.S.C. §§ 157(b)(2) and 1334(a)</u>. The Court has jurisdiction over the Bankruptcy Case pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code[3] and should be confirmed. The Debtor is an eligible debtor under sections 109 and 1182(1) of the Bankruptcy Code. Venue is proper under 28 U.S.C. §§ 1408 and 1409. The Debtor is a proper Plan proponent under section 1189(a) of the Bankruptcy Code.

C.      <u>Bankruptcy Case</u>. On January 3, 2023 (the "Petition Date"), the Debtor commenced this voluntary case under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case").

D.      <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Bankruptcy Case maintained by the Clerk of the Court and/or its duly appointed agent, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or addressed at the hearings held before the Court during the pendency of the Bankruptcy Case.

E.      <u>Burden of Proof</u>. The Debtor, as the Plan proponent, has the burden of proving the elements of 11 U.S.C. § 1191, including elements of 11 U.S.C. § 1129(a), by a preponderance of the evidence. The Debtor has met such burden.

F.      <u>Transmittal and Mailing of Materials: Notice</u>. Due, timely, proper, and adequate notice of the Plan and the Confirmation Hearing, together with the deadlines for voting to accept or reject the Plan, to object to the Plan, and to opt out of the Third-Party Releases (as defined below), has been provided substantially in accordance with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the procedures set forth in the Confirmation Scheduling Order.

---

[3] 11 U.S.C. §§ 101 *et seq.*

G.       Identification of Plan Proponents—Fed. R. Bankr. P. 3016(a). The Plan satisfies

Bankruptcy Rule 3016(a) by identifying the date of the Plan and the proponent of the Plan.

H.       Solicitation and Transmittal of Solicitation Package. The solicitation of votes to

accept or reject the Plan and requests for consent to the treatment were solicited in good faith and

in compliance with 11 U.S.C. §§ 1125 and 1126, Bankruptcy Rules 3017 and 3018, all other

applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations. The

Solicitation Package was transmitted to all creditors entitled to vote on the Plan, sufficient time

was prescribed for such creditors to accept or reject the Plan, and the solicitation materials used,

and solicitation procedures followed, comply with 11 U.S.C. § 1126, thereby satisfying the

requirements of Fed. R. Bankr. P. 3018. All procedures used to distribute the Solicitation Packages

to the applicable holders of Claims were fair and conducted in accordance with the Confirmation

Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, and any other applicable rules,

laws, and regulations.

I.       Good Faith Solicitation—11 U.S.C. § 1125(e). Based on the record before the Court

in the Bankruptcy Case, the Debtor and its attorneys, and other representatives have acted in good

faith within the meaning of 11 U.S.C. § 1125(e) in compliance with the applicable provisions of

the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities

relating to the solicitation of acceptances to and consents to the treatment afforded under the Plan

and their participation in the activities described in 11 U.S.C. § 1125.

J.       Notice of the Confirmation Hearing—Fed. R. Bankr. P. 2002 and 3017. The Debtor

gave notice of the Confirmation Hearing, the deadline to accept or reject the Plan, and the deadline

to object to the Plan in accordance with the Confirmation Scheduling Order. The Solicitation

Package was transmitted to the creditors entitled to vote on the Plan in accordance with Fed. R. Bankr. P. 2002 and 3017.

K. <u>Impaired Classes That Have Voted to Accept the Plan</u>. As evidenced by the record established at the Confirmation Hearing, at least one or more Impaired Classes have voted to accept the Plan, as defined by 11 U.S.C. §§ 1124 and 1126.

L. <u>Modifications</u>. The modifications to the Plan, as set forth in the Amended Plan and incorporated into the Plan as set forth on the record at the Confirmation Hearing and in this Order, do not materially and adversely affect or change the treatment of any creditor who has not accepted such modifications. Under Fed. R. Bankr. P. 3019, these modifications neither require additional disclosure under 11 U.S.C. § 1125 or re-solicitation of acceptance or rejections under 11 U.S.C. § 1126, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptance or rejections of the Plan. Disclosure of the modifications, both in the Amended Plan and on the record at the Confirmation Hearing, constitutes due and sufficient notice thereof under the circumstances of these Bankruptcy Case. Accordingly, pursuant to 11 U.S.C. § 1127 and Bankruptcy Rule 3019, all holders of Claims that have accepted or are conclusively deemed to have accepted the Plan are deemed to have accepted such modifications to the Plan.

M. <u>No Secured Claims</u>. No secured claims exist against assets of the Debtor or its estate, and as such, the provisions of the Bankruptcy Code regarding modification of rights and treatment of secured claims are not applicable to confirmation of the Debtor's Plan in this Bankruptcy Case.

N. <u>Plan Compliance with 11 U.S.C. § 1190</u>. The Plan complies with the applicable provisions of 11 U.S.C. § 1190.

a. The Plan discloses a brief history of the business operations of the debtor in Article II, a liquidation analysis in Article III, and projections with respect

---

to the ability of the debtor to make payments under the proposed Plan in Article IV and Exhibit C, satisfying 11 U.S.C. § 1190(1).

b. The Plan satisfies 11 U.S.C. § 1190(2), as it provides for the Debtor's future income for the thirty-six (36) months following confirmation to be used to execute the Plan. Submission of such income to a trustee is not necessary, as the Debtor confirms its Plan as a consensual Plan pursuant to 11 U.S.C. § 1191(a).

O. <u>Plan Compliance with 11 U.S.C. § 1191(a)</u>. The Plan complies with the applicable provisions of 11 U.S.C. § 1129(a), other than paragraph (15) of that section, as set forth herein, and is eligible to be confirmed as a consensual Plan pursuant to 11 U.S.C. § 1191(a).

P. <u>Plan Compliance with Bankruptcy Code – 11 U.S.C. § 1129(a)(1)</u>. The Plan complies with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, thereby satisfying 11 U.S.C. § 1129(a)(1).

a. <u>Proper Classification 11 U.S.C. §§ 1122 and 1123(a)(1)</u>. In addition to Administrative Claims, which need not be classified, Article V of the Plan designates three (3) Classes of Impaired Claims, including Priority Tax Claims, and one (1) Class of Unimpaired Equity Interests. The Claims placed in each Class are substantially similar to other Claims in each such Class, and such classification is therefore consistent with 11 U.S.C. § 1122. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims created under the Plan, and such Classes and the Plan's treatment thereof do not unfairly discriminate between Holders of Claims. The Plan satisfies 11 U.S.C. §§ 1122 and 1123(a)(1).

b. <u>Specified Treatment of Impaired and Unimpaired Classes—11 U.S.C. §§ 1123(a)(2) and (3)</u>. Article V of the Plan specifies whether each Class of Claims is Impaired or Unimpaired, satisfying 11 U.S.C. § 1123(a)(2), and Article VII of the Plan specifies the treatment of the Impaired Classes of Claims, thereby satisfying 11 U.S.C. § 1123(a)(3).

c. <u>No Discrimination—11 U.S.C. § 1123(a)(4)</u>. Article VII of the Plan either provides the same treatment for each Claim within each respective Class or the Holder of a particular Claim or Interest has agreed to a less favorable treatment of his/her/its particular Claim or interest, thereby satisfying 11 U.S.C. § 1123(a)(4).

d.     <u>Implementation of the Plan—11 U.S.C. § 1123(a)(5)</u>. Article VIII of the Plan provides adequate and proper means for implementing the Plan.

e.     <u>Selection of Officers and Directors—11 U.S.C. § 1123(a)(7)</u>. The Debtor properly and adequately discloses in in Article VIII the persons which will be managing the Debtor post-confirmation, including the Debtor's current managers, Chase McLendon, Bart McLendon, and Barbara Wagenhauser. As stated on the record at the Confirmation Hearing, such managers shall receive no compensation during the pendency of the Plan repayment period. Consequently, 11 U.S.C. § 1123(a)(7) is met.

f.     <u>Permissible Plan Provisions—11 U.S.C. § 1123(b)</u>. The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

g.     <u>Impairment of Classes—11 U.S.C. § 1123(b)(1)</u>. In accordance with Bankruptcy Code Section 1123(b)(1), Article VII of the Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims under the Plan.

h.     <u>Treatment of Executory Contracts and Unexpired Leases—11 U.S.C. § 1123(b)(2)</u>. The Plan constitutes a motion by the Debtor to reject all executory contracts and unexpired leases not expressly assumed or rejected on or before the Effective Date as allowed by 11 U.S.C. § 1123(b)(2), as set forth in Article IX of the Plan.

i.     <u>Settlement of Claims—11 U.S.C. § 1123(b)(3)</u>. Articles VII and VIII of the Plan provide for various treatment of Classes of Claims, including the settlement of, or adjustments to, certain Claims or Interests belonging to the Debtor or to the Estate as allowed by 11 U.S.C. § 1123(b)(3). Further, Articles VIII and XII specifically outline the various settlements contained in the Plan, including settlement with Insiders.

j.     <u>Third-Party Releases</u>. Article XII of the Plan describes certain releases granted by the Releasing Parties (the "Third-Party Releases"). The Ballots sent to all Holders of Claims entitled to vote on the Plan unambiguously stated that the Plan contains the Third-Party Releases, set forth the terms of the Third-Party Releases, and provided the option for such Holders to opt-out of granting the Third-Party Releases if such Holders made the Opt Out Election in the Ballot. The Third-Party Releases are (a) consensual; (b) specific in language; (c) integral to the Plan; (d) a condition of the settlements embodied in the Plan; and (e) not violative of the Bankruptcy Code or precedent set by this Court and the Fifth Circuit Court of Appeals. The Third-Party

Releases are fully consensual because all parties in interest, including all Releasing Parties, were provided with extensive and sufficient notice of the Chapter 11 Case, the Plan, the deadline to object to confirmation of the Plan, and the process for opting-out of giving the Third-Party Releases, and all such parties were properly informed that the Plan contained release provisions that could affect such parties' rights. The Third-Party Releases are conspicuous and emphasized with boldface type in the Plan, and the Ballots. The Third-Party Releases are consistent with established practice in this jurisdiction and others because they are, *inter alia*: (a) fully consensual; (b) in the best interests of the Debtor, its Estate, and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases.

k. <u>Exculpations</u>. The exculpations described in Article VII of the Plan (the "Exculpations") are appropriate under applicable law because they are proposed in good faith and are appropriately limited in scope. Without limiting anything in the Exculpations, each Exculpated Party is appropriately released and exculpated from Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of, formulating, negotiating, implementing, confirming, or consummating the Plan, except for willful misconduct. The Exculpations are consistent with established practice in this jurisdiction and others.

l. <u>Additional Plan Provisions—11 U.S.C. § 1123(b)(6)</u>. Further, the Plan provides a number of provisions related to the settlement, timing, and payment of claims, as well as continuing jurisdiction and certain injunctions and exculpations. The Debtor Release, Exculpation, and Injunction provisions provided in the Plan (i) are within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (ii) are integral elements of the transactions incorporated into the Plan, and inextricably bound with the other provisions of the Plan; (iii) confer material benefit on, and are in the best interests of, the Debtor, its Estate, and its creditors; (iv) are fair, equitable, and reasonable; (v) are given and made after due notice and opportunity for hearing; (vi) satisfy the requirements of Bankruptcy Rule 9019; and (vii) are consistent with the Bankruptcy Code and other applicable law, and as set forth herein. All other Plan provisions are acceptable and are not inconsistent with the applicable provisions of the Bankruptcy Code and other applicable law. Thus, the Plan complies with 11 U.S.C. § 1123(b)(6).

Q.      The Debtor's Compliance with the Bankruptcy Code—11 U.S.C. § 1129(a)(2). The Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying 11 U.S.C. § 1129(a)(2). Based upon the record made at the Confirmation Hearing and pleadings filed in the Bankruptcy Case, the Debtor has complied with applicable provisions of the Bankruptcy Code and orders of the Court, and the Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Confirmation Scheduling Order in transmitting the Solicitation Package and related documents and notices and in soliciting and tabulating votes on the Plan.

R.      Plan Proposed in Good Faith—11 U.S.C. § 1129(a)(3). The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying 11 U.S.C. § 1129(a)(3). This Court has examined the totality of the circumstances surrounding the formulation of the Plan. Based upon the evidence presented at the Confirmation Hearing, the Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of effectively reorganizing the Debtor and maximizing the recovery to creditors in accordance with the priorities set forth in the Bankruptcy Code.

S.      Payment for Services or Costs and Expenses—11 U.S.C. § 1129(a)(4). Any payments made or to be made by the Debtor for services or for costs and expenses in connection with the Bankruptcy Case have been approved by, or are subject to the approval of, the Court as reasonable, as set forth in article VI of the Plan, thereby satisfying 11 U.S.C. § 1129(a)(4).

T.      Identification of Directors, Officers, and Insiders —11 U.S.C. § 1129(a)(5). The Debtor has complied with 11 U.S.C. § 1129(a)(5) by disclosing in Article VIII of the Plan or at the Confirmation Hearing (1) the identity and affiliations of any individual proposed to serve, after

confirmation of the Plan, as a director or officer of the Reorganized Debtor, and (2) the compensation to be paid to such individuals.

U.    No Rate Changes—11 U.S.C. § 1129(a)(6). No governmental regulatory commission has jurisdiction over rates of the Debtor after confirmation of the Plan. Thus, 11 U.S.C. § 1129(a)(6) is not applicable in the Bankruptcy Case.

V.    Best Interests of Creditors Test—11 U.S.C. § 1129(a)(7). The Plan satisfies 11 U.S.C. § 1129(a)(7). The Plan and evidence adduced at the Confirmation Hearing (i) are persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (ii) have not been controverted by other persuasive evidence or have not been challenged; (iii) are based upon reasonable and sound assumptions; (iv) provide a reasonable estimate of the liquidation value of the Debtor's assets upon conversion to a chapter 7 proceeding; and (v) establish that each holder of a Claim in an Impaired Class will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the applicable Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

W.    Acceptance by All Impaired Classes—11 U.S.C. § 1129(a)(8). With respect to each Class of Claims or Interests, each class has either accepted the Plan or is not Impaired under the plan, thereby satisfying 11 U.S.C. § 1129(a)(8).

X.    Treatment of Administrative, Other Priority Claims and Priority Tax Claims—11 U.S.C. § 1129(a)(9). The treatment of Administrative Claims and Priority Tax Claims set forth in Articles VI and VII of the Plan satisfies the requirements of 11 U.S.C. §§ 1129(a)(9). Administrative expenses will be paid in full on the Effective Date of the plan, unless otherwise agreed upon by the Debtor and the holder of the Administrative Claim, and Priority Tax Claims

shall be paid from the Debtor's disposable income within the first six months following the Effective Date, as accepted by that Class (Class 1).

Y.    <u>Acceptance by Impaired Classes—11 U.S.C. § 1129(a)(10)</u>. At least one Class of Claims that is Impaired under the Plan has accepted the Plan, without including any acceptance of the Plan by any Insider, as required by 11 U.S.C. § 1129(a)(10). Specifically, Classes 1 and 2 set forth in Articles V and VII of the Plan exclude insiders, are both Impaired, and have accepted the Plan.

Z.    <u>Feasibility—11 U.S.C. § 1129(a)(11)</u>. The Plan satisfies the feasibility requirement of 11 U.S.C. § 1129(a)(11). Specifically, the Plan is not likely to be followed by liquidation or need for further reorganization.

AA.    <u>Payment of Fees—11 U.S.C. § 1129(a)(12)</u>. All fees payable under 28 U.S.C. § 1930 on or before the Effective Date, as determined by the Court, have been paid or will be paid on the Effective Date pursuant to the Plan, thus satisfying the requirements of 11 U.S.C. § 1129(a)(12). The Debtor has paid all required interim compensation to the Subchapter V Trustee in this case, pursuant to paragraph 8 of the Court's Scheduling Order and Notice of Status Conference at Docket No. 10.

BB.    <u>Continuation of Retiree Benefits—11 U.S.C. § 1129(a)(13)</u>. The Debtor does not have any retiree benefits to be continued under the Plan. Thus, 11 U.S.C. § 1129(a)(13) is not applicable to the Debtor.

CC.    <u>Inapplicability of 11 U.S.C. §§ 1129(a)(14) & (15)</u>.  The Debtor does not have any domestic support obligations and is not an individual, thus 11 U.S.C. §§ 1129(a)(14) and (15) are not applicable.

DD.    <u>No Objections Filed</u>. No objections to the Debtor's Plan were timely filed.

EE.  <u>Satisfaction of Confirmation Requirements</u>. The Plan satisfies the requirements for confirmation set forth in 11 U.S.C. § 1191(a).

**ACCORDINGLY, THE COURT HEREBY ORDERS THAT:**

1.  <u>Confirmation of the Plan</u>. The Plan, which includes any and all modifications, including any modifications set forth on the record at the Confirmation Hearing, is **APPROVED** and **CONFIRMED** as a consensual Plan under 11 U.S.C. § 1191(a) in its entirety. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order. For reference, the Plan, with the modifications incorporated, is attached as **Exhibit A** to this Order.

2.  <u>Objections</u>. No objections to the Plan were timely filed in this Bankruptcy Case.

3.  <u>Settlements Approved</u>. The compromises and settlements specified in Articles VIII and XII of the Plan are expressly approved and conclusively determined to be in the best interests of Creditors and the Estates.

4.  <u>Effects of Confirmation; Effectiveness; Successors and Assigns</u>. The Court directs that Fed. R. Civ. P. 62(a) and the stay provided by Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order, and the Court authorizes the Debtor to consummate the Plan after entry of this Confirmation Order. Subject to the occurrence of the Effective Date, and notwithstanding any otherwise applicable law, immediately upon the entry of this Confirmation Order, the terms of the Plan (including the Plan Exhibits and all documents and agreements executed pursuant to the Plan) and this Confirmation Order shall be binding on (a) the Debtor, (b) any entity issuing securities under the Plan, (c) any Creditor, (d) any Equity Interest Holder, and (e) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, whether or not the Claim or Interest of such Creditor or Equity Interest Holder is Impaired under the Plan and whether or

not such Creditor or Equity Interest Holder accepted the Plan. Upon the occurrence of the Effective Date with respect to the Debtor, the Plan shall be deemed substantially consummated.

5.      <u>Releases and Exculpations</u>. The release and exculpation provisions set forth in Article XII of the Plan are incorporated into this Confirmation Order as if set forth in full herein, are hereby approved in their entirety, and are subject to any other terms of the Plan.

6.      <u>Injunction Against Interference with the Plan</u>. Pursuant to Article XII of the Plan, upon the entry of the Confirmation Order, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to 11 U.S.C. § 105 from taking any action to interfere with the implementation or consummation of the Plan.

7.      <u>Plan Implementation Authorization</u>. Pursuant to the Plan, all necessary documents for the implementation of the Plan shall be executed by all necessary parties in interest on the Effective Date, unless an earlier date is provided by the Plan.

8.      <u>Assumption or Rejection of Executory Contracts and Unexpired Leases—11 U.S.C. § 1123(b)(2)</u>. Pursuant to Article IX of the Plan, all executory contracts and unexpired leases to which the Debtor is a party shall be rejected as of the Petition Date, unless the Debtor expressly assumed or rejected such contract or lease on or before the Effective Date. For the sake of clarity, nothing in this Order is meant to alter any former Order of this Court with regarding to a prior assumption or rejection.

9.      <u>Damage Claims</u>. Pursuant to Article IX of the Plan, any Claims based upon rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the Debtor, unless a proof of claim is filed with the Bankruptcy Court and served on the Debtor such that it actually receives the proof of claim within thirty (30) calendar days of entry of this Confirmation Order.

10.     <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any State or any other governmental authority with respect to implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan and any documents, instruments, agreements, amendments, or modifications related thereto.

11.     <u>Exemption from Certain Taxes</u>. Pursuant to 11 U.S.C. § 1146(c), any transfers contemplated by the Plan shall not be subject to any stamp, transfer tax, or similar tax.

12.     <u>Resolution of Claims</u>. Except as otherwise ordered by the Court, any Claim that is not an Allowed Claim shall be determined, resolved, or adjudicated in accordance with the terms of the Plan. All objections to Claims shall be filed with the Court within ninety (90) days from the Effective Date, and a copy of the objection shall be served upon the Holder of the Claim to which such objection pertains. Any request for an extension period to object to Claims need be served only upon the creditors involved and the United States Trustee.

13.     <u>Payment of Fees</u>. All fees payable by the Debtor under 28 U.S.C. § 1930, if any, shall be paid on the later of the Effective Date or the due date.

14.     <u>Reversal</u>. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Committee's receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur

shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

15.     <u>Retention of Jurisdiction</u>. Except as otherwise specified in the Plan, pursuant to 11 U.S.C. §§ 105(a) and 1142, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction as provided in Article XIV of the Plan.

16.     <u>Notice of Entry of Confirmation Order</u>. The Debtor shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(j), 2002(k), and 3020(c) on all Creditors, the United States Trustee, the Securities and Exchange Commission, the Internal Revenue Service, and other parties in interest, by causing notice of entry of this Confirmation Order to be delivered to such parties by first-class mail, postage prepaid.

17.     <u>Notice of Effective Date</u>. Within five (5) Business Days following the occurrence of the Effective Date, the Debtor shall file notice of the occurrence of the Effective Date with the Bankruptcy Court and shall serve a copy of same on (a) the United States Trustee; and (b) the entities that have requested notice in the Bankruptcy Case pursuant to Bankruptcy Rule 2002.

18.     <u>Reference to Plan Provisions</u>. The failure to specifically include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

19.     <u>Inconsistency</u>. In the event of an inconsistency between the Plan and any other agreement, instrument, or document intended to implement the provisions of the Plan, the provisions of the Plan shall govern unless otherwise expressly provided for in such agreements, instruments, or documents. In the event of any inconsistency between the Plan and any agreement,

instrument, or document intended to implement the Plan and this Confirmation Order, the provisions of this Confirmation Order shall govern.

20.     <u>Enforceability</u>. Pursuant to 11 U.S.C. §§ 1123(a) and 1142(a) and the provisions of this Confirmation Order, the Plan and all plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

21.     <u>Final Order</u>. This Confirmation Order constitutes a Final Order, and no just cause exists for delay of this Confirmation Order.

22.     <u>Administrative and Professional Fee Claims</u>. Except for Professional Claims, the deadline for filing all applications for payment of Administrative Claims shall be on or before thirty (30) days after the Effective Date. Except as expressly provided elsewhere in the Plan, any Administrative Claim filed after that date shall be deemed untimely filed and shall be disallowed. The deadline for objecting to such Administrative Claims is twenty-four (24) days after a request for payment of such Claim has been filed. The deadline for submitting applications for compensation for services rendered in the Bankruptcy Case pursuant to 11 U.S.C. §§ 327, 328, 330, 331, or 1103 (the "Professional Fee Claims") prior to the Effective Date is one hundred twenty (120) days after the Effective Date. The deadline to object to final fee applications shall be the twenty-first (21st) day after such fee application has been filed.

# # # END OF ORDER # # #

**Submitted by:**

*/s/ Megan F. Clontz*
Jason P. Kathman
Texas Bar No. 24070036
Megan F. Clontz
Texas Bar No. 24033174
Lindsay Doman *(admitted Pro Hac Vice)*
Minnesota Bar No. 0401626
SPENCER FANE LLP
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email: jkathman@spencerfane.com
Email: mclontz@spencerfane.com
Email: ldoman@spencerfane.com

**COUNSEL FOR DEBTOR**
**AND DEBTOR-IN-POSSESSION**

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-30032-sgj** |
| **HIGGINS AG, LLC** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |
| | § | |

---

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

---

Dated: May 14, 2023

*/s/ Megan F. Clontz*

Jason P. Kathman
Texas Bar No. 24070036
Megan F. Clontz
Texas Bar No. 24069703
Lindsay Doman (admitted Pro Hac Vice)
Minnesota Bar No. 0401626
SPENCER FANE LLP
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email: jkathman@spencerfane.com
Email: mclontz@spencerfane.com
Email: ldoman@spencerfane.com

**COUNSEL FOR THE DEBTOR AND
DEBTOR-IN-POSSESSION**

# TABLE OF CONTENTS

**ARTICLE I:     SUMMARY OF THE PLAN**.................................................................. 1

    1.1    Overview of the Plan. ....................................................... 1

    1.2    Exhibits and Plan Supplement. ........................................ 1

    1.3    Definitions........................................................................ 1

    1.4    Voting Procedures............................................................. 2

**ARTICLE II:     HISTORY OF BUSINESS AND DISCLOSURES** ....................... 2

    2.1    History and Background of the Debtor................................ 2

    2.2    Reasons for Filing.............................................................. 2

**ARTICLE III:   LIQUIDATION ANALYSIS**................................................... 2

    3.1    Liquidation Analysis of Higgins AG, LLC........................... 2

**ARTICLE IV:   FINANCIAL PROJECTIONS**.................................................. 3

    4.1    Financial Projections........................................................ 3

**ARTICLE V:     DESIGNATION OF CLASSES OF CLAIMS** ............................ 3

    5.1    Designation of Classes of Claims..................................... 3

    5.2    Unclassified Claims. ........................................................ 3

    5.3    Classified Claims and Interests of Higgins AG, LLC........... 3

**ARTICLE VI:   PAYMENT OF ADMINISTRATIVE CLAIMS AND EXPENSES AND CERTAIN PRIORITY CLAIMS** ...................................... 4

    6.1    Administrative Claim Applications and Deadline. ............... 4

    6.2    Treatment of Administrative Claims.................................. 4

    6.3    Treatment of Professional Claims..................................... 5

**ARTICLE VII:  TREATMENT OF CLASSES OF CLAIMS AND INTERESTS**................. 5

    7.1    Priority Tax Claims (Class 1) ........................................... 6

    7.2    General Unsecured Claims (Class 2). ............................... 6

    7.3    Insider Claims (Class 3)................................................... 6

    7.4    Equity Interests in Higgins AG, LLC (Class 4)……………………………… 9

**ARTICLE VIII: MEANS OF IMPLEMENTING THE PLAN** ............................... 6

    8.1    Continued Existence of the Reorganized Debtor................. 6

    8.2    Lease of Assets.............................................................. 6

    8.3    Sale of Assets................................................................. 6

    8.4    Settlement with McLendon Parties .................................. 6

8.5      Payment Administrator ..................................................................... 8

8.6      Compromises and Settlements ............................................................ 8

8.7      Releases by the Debtor ...................................................................... 8

8.8      Releases by Holders of Claims and Interests ...................................... 8

8.9      Intentionally Omitted. ....................................................................... 8

8.10     Corporate Action. .............................................................................. 8

8.11     Documents.. ...................................................................................... 9

8.12     Post-Effective Date Management ....................................................... 9

8.13     Preservation of Causes of Action and Rights.. .................................... 9

8.14     Conditions to Effective Date .............................................................. 10

8.15     Waiver of Conditions Precedent. ........................................................ 10

**ARTICLE IX:    PROVISIONS FOR THE ASSUMPTION AND REJECTION OF
                 EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................... 10**

9.1      General Rejection of Executory Contracts and Leases .......................... 10

9.2      Claims for Damages ........................................................................... 10

**ARTICLE X:      RESOLUTION OF UNDETERMINED CLAIMS ..................................... 11**

10.1     Standing. ........................................................................................... 11

10.2     Effect of Bar Date. ............................................................................. 11

10.3     Amendments to Claims; Claims Filed After the Confirmation Date .......... 11

10.4     Objection Deadline. ............................................................................ 11

10.5     Creditor Response to Objection ........................................................... 11

10.6     No Payment Pending Allowance.. ........................................................ 12

10.7     Allowance of Claims ........................................................................... 12

10.8     Estimation of Claims ........................................................................... 12

**ARTICLE XI:     DISTRIBUTION PROCEDURES ......................................................... 12**

11.1     Record Date for Claims.. .................................................................... 12

11.2     Form of Distributions .......................................................................... 12

11.3     Conditions to Distributions; Warranty of Entitlement ........................... 12

11.4     Withholding Taxes .............................................................................. 13

11.5     Setoffs. .............................................................................................. 13

11.6     Rounding. .......................................................................................... 13

11.7     *De Minimis* Distributions. .................................................................... 13

11.8     Undeliverable and Unclaimed Distributions .......................................... 13

11.9    Disputed Distributions. ........................................................................................ 14

**ARTICLE XII:  EFFECTS OF CONFIRMATION OF PLAN, INJUNCTION, AND
EXCULPATIONS ................................................................................ 14**

12.1    Notice of the Effective Date. ............................................................................. 14

12.2    Binding Effect of Plan ....................................................................................... 14

12.3    Discharge of Debtor.  ......................................................................................... 14

12.4    Injunction Against Interference with Plan.. ...................................................... 15

12.5    Exculpations....................................................................................................... 15

12.6    Releases by the Debtor....................................................................................... 15

**12.7    Releases by Holders of Claims and Interests.................................................. 16**

**ARTICLE XIII: MODIFICATION OF THE PLAN ................................................... 17**

13.1    Amendments Prior to Confirmation Date. ......................................................... 17

13.2    Amendments After Confirmation Date............................................................... 17

13.3    Effect on Claims.. .............................................................................................. 18

**ARTICLE XIV: RETENTION OF JURISDICTION ................................................. 18**

14.1    Purposes. ............................................................................................................ 18

14.2    Exclusive Jurisdiction. ....................................................................................... 19

14.3    Abstention. .......................................................................................................... 19

**ARTICLE XV:  GENERAL PROVISIONS ................................................................ 19**

15.1    Certain Rights Unaffected.................................................................................. 19

15.2    Incorporation of Valuation Motion. .................................................................. 19

15.3    Automatic Stay.................................................................................................... 20

15.4    Reservation of Rights.......................................................................................... 20

15.5    Rights Under 1191(b). ....................................................................................... 20

15.6    Headings. ............................................................................................................ 20

15.7    Severability. ........................................................................................................ 20

15.8    Governing Law.. ................................................................................................. 20

15.9    Successors and Assigns....................................................................................... 20

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-30032-sgj** |
| **HIGGINS AG, LLC** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |
| | § | |

## DEBTOR'S PLAN OF REORGANIZATION

Higgins AG, LLC ("Higgins AG" or the "Debtor") hereby amends its proposed Plan of Reorganization filed at Docket No. 36 (together with all amendment and modifications thereto, the "Plan"), pursuant to 11 U.S.C. §§ 1189 and 1190.

## ARTICLE I
## SUMMARY OF THE PLAN

1.1     Overview of the Plan.  The Plan provides for a restructure of the Debtor's balance sheet and assets and payment of the Debtor's creditors as described herein.  The Plan was developed by the Debtor and proposes, among other things, the means by which all Claims against the Debtor will be finally resolved and treated for distribution purposes, consistent with the provisions and priorities mandated by the Bankruptcy Code.  The Plan is essentially a new contract between the Debtor and its Creditors, proposed by the Debtor to its Creditors for approval. Creditors approve or disapprove of the Plan by voting their Ballots on the Plan, if they are in a Class entitled to vote, and, if appropriate, by objecting to confirmation of the Plan.  However, the Plan can be confirmed by the Bankruptcy Court even if less than all Creditors or Classes accept the Plan and, in such an instance, the Plan will still be binding on those Creditors or Classes that reject the Plan.  Approval and consummation of the Plan will enable the Bankruptcy Case to be finally concluded.

1.2     Exhibits and Plan Supplement.  All exhibits are incorporated into and are a part of the Plan as if set forth in full herein.  Holders of Claims and Interests may obtain a copy of the Filed exhibits upon written request to the Debtor.  Upon their Filing, the exhibits may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's CM/ECF or PACER website. The documents contained in the exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  The Debtor expressly reserves the right to modify or make additions to or subtractions from any exhibit or to the Plan and to amend, modify, or supplement any exhibit to the Plan in conformance with the provisions of this Plan.

1.3     Definitions.  Definitions and Rules of Interpretation and Computation of Time are attached hereto as **Exhibit A**.

1.4    Voting Procedures.  YOUR ACCEPTANCE OF THE PLAN IS IMPORTANT. Voting procedures and Ballot are attached hereto as **Exhibit B**.

## ARTICLE II
## HISTORY OF BUSINESS AND DISCLOSURES

2.1    History and Background of the Debtor.  Higgins AG was formed as a limited liability company under the laws of the State of Florida on November 18, 2011, by Brent Higgins and Marianne Higgins (collectively, the "Higgins Individuals"). The Debtor provides consulting, design, and construction services to the horticulture, agriculture, and medicinal industries, with a focus on greenhouse construction. In 2017, the Debtor added The McLendon Company as a member to infuse capital into the organization. Brent Higgins maintained control as an employee, with the title General Manager.

Prior to filing this case, the Debtor and Brent Higgins were engaged in litigation relating to Higgins's management of the Debtor. A mediated settlement agreement was executed by the Debtor and the Higgins Individuals, effective June 14, 2022, whereby Brent Higgins's employment was terminated as of the effective date of the mediated settlement agreement. Brent Higgins was formally removed as a Manager of the Debtor prior to the Petition Date.

The Debtor was also involved in time-consuming and costly litigation with several Creditors prior to the Petition Date, including lawsuits involving Creditors Worthmann LLC, Gaylord/Miller Electric Corporation, Bobcat of the Rockies, and Sunstate Equipment Co., among others.

2.2    Reasons for Filing.  The Debtor Filed for relief under the SBRA provisions of Chapter 11 of the Bankruptcy Code ("Subchapter V") on January 3, 2023 (the "Petition Date"). Following the removal of Brent Higgins as manager of the Debtor, and in light of the pending litigation and collection efforts against the Debtor and its remaining assets, the current Managers of the Debtor considered the financial and operational aspects of the Debtor's business and determined that it is desirable and in the best interests of the Debtor, its Creditors, its Equity Interest Holders, and other interested parties that the Debtor file a petition for relief under Chapter 11 of the Bankruptcy Code to (1) stop costly litigation and post-judgment discovery against the Debtor, (2) restructure the outstanding debts of the Debtor, (3) and utilize the Debtor's remaining assets to fund the Debtor's plan payments and ongoing operations.

## ARTICLE III
## LIQUIDATION ANALYSIS

3.1    Liquidation Analysis of Higgins AG, LLC.  Under the Plan, Creditors of Higgins AG will receive on account of their Claims, or retain under the Plan on account of such Claims, property of a value, as of the Effective Date, that is not less than the Creditor would receive in a chapter 7 liquidation. The chart below graphically demonstrates the estimated and anticipated results of a liquidation of the Debtor. The Debtor notes that this estimation is by definition uncertain. The Debtor and its agents set forth what its best, educated, and good faith analysis of what the same would be.

| LIQUIDATION ANALYSIS | | |
|---|---|---|
| Cash | $ | 50,000.00 |
| Forklift | $ | 15,000.00 |
| Miscellaneous Tools, Equipment, and Office Furniture | $ | 3,100.00 |
| **Total Assets for Distribution** | $ | 68,100.00 |
| Chapter 7 Cost of Administration (estimate)[1] | $ | 15,000.00 |
| Chapter 11 Costs of Administration (estimate) | $ | 40,000.00 |
| **Available for Unsecured Claims** | $ | 13,100.00 |
| Priority Claims | $ | 3,709.70 |
| **Available for General Unsecured** | $ | 9,390.30 |
| General Unsecured Claim Total[2] | $5,360,313.02 | |
| **Percent Distribution to Unsecured Creditors** | Approx. 0.17% | |

## ARTICLE IV
## FINANCIAL PROJECTIONS

4.1     Financial Projections.  The Debtor has analyzed its ability to make the payments specified in the Plan, and in support of its belief that it can make the payments specified herein, and pursuant to 11 U.S.C. § 1190, the Debtor provides the financial projections attached hereto as **Exhibit C.**

## ARTICLE V
## DESIGNATION OF CLASSES OF CLAIMS

5.1     Designation of Classes of Claims.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

5.2     Unclassified Claims.

         Allowed Administrative Claims (Unimpaired)

5.3     Classified Claims and Interests of Higgins AG, LLC.

         Class 1:        Priority Tax Claims (Impaired)

---

[1] Assumes approximately $8,500 in Trustee commissions for sale of the assets utilizing the statutory formula plus $6,500 in professional fees a Trustee would incur in administering the case and filing the necessary motions and pleadings to sell and administer the estate.
[2] Includes $1.4 Million in claims of Insiders, which are being waived as part of the settlement proposed in the Plan.

Class 2:        Claims of General Unsecured Creditors (Impaired)

Class 3:        Claims of Insiders (Impaired)

Class 4:        Equity Interests (Unimpaired)

## ARTICLE VI
## PAYMENT OF ADMINISTRATIVE CLAIMS
## AND EXPENSES AND CERTAIN PRIORITY CLAIMS

6.1    Administrative Claim Applications and Deadline.    Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claim Bar Date: (i) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (ii) serve a copy of such application on the Debtor, the United States Trustee, and all other parties entitled to notice thereof. Failure to file and serve such application by the Administrative Claim Bar Date or Professional Claim Bar Date, whichever date is applicable, shall result in the Administrative Claim being forever barred and discharged. Except as specifically provided in the Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

6.2    Treatment of Administrative Claims.    Except to the extent that the Debtor and the Holder of an Allowed Administrative Claim may otherwise agree in writing, a Holder of an Administrative Claim which is an Allowed Claim prior to the Effective Date of the Plan shall be paid its Pro Rata share of the Administrative Claim Distribution Pool, paid quarterly, starting on the Effective Date and ending on (i) the date which is thirty-six (36) months following the Effective Date, or (ii) the date on which all Allowed Administrative Claims and Allowed Professional Claims are paid in full. Each quarterly payment made pursuant to this section (an "Administrative Claim Quarterly Payment") shall be due ninety (90) days following the due date of the previous Administrative Claim Quarterly Payment. The Administrative Claim Distribution Pool shall be initially funded in an amount of $50,000.00, less any amounts drawn on the Debtor's retainer deposited in the IOLTA trust account of Spencer Fane, LLP, on or before the Effective Date, then funded from the Debtor's Disposable Income which exceeds the amount required to pay in full all Allowed Priority Tax Claims against the Debtor, up to an amount sufficient to satisfy all Allowed Administrative Expense Claims and Allowed Professional Claims. Administrative Claims that become Allowed Claims after the Effective Date of the Plan shall be paid, quarterly, their Pro Rata share of any funds accumulated in the Administrative Claim Distribution Pool during the prior quarter, starting with the first Administrative Claim Quarterly Payment following the date which is ten (10) days following the date on which the Administrative Claim becomes an Allowed Claim.

For the avoidance of doubt, the Debtor's post-confirmation Disposable Income shall be used first to pay all Allowed Priority Tax Claims, then to pay all Allowed Administrative Expense Claims and Allowed Professional Claims, and then to pay Allowed General Unsecured Claims

only after all Allowed Priority Tax Claims, Allowed Administrative Expense Claims, and Allowed Professional Claims are paid in full.

6.3    Treatment of Professional Claims.  Professional Claims become Allowed the same as Administrative Claims in this Article (Section 6.1) and are treated the same as Administrative Claims in this Article (Section 6.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement of filing an application as provided in Section 6.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part, shall, with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 6.1, but shall file such application by the Professional Claim Bar Date (as opposed to the Administrative Claim Bar Date) and shall be subject to such law, rules, and procedures as would be otherwise applicable to the same outside of the this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement in the event of administrative insolvency and shall cease being subject to said disgorgement ten (10) days after the Professional Claim Bar Date unless, upon motion and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; (v) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis; and (vi) upon written agreement between the Debtor and the Holder of a Professional Claim, such amount may be paid pursuant to this Plan upon terms agreed upon between the Debtor and the Professional.

## ARTICLE VII
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

7.1    Priority Tax Claims.  (Class 1) Class 1 consists of all Allowed Priority Tax Claims against Higgins AG. Allowed Priority Tax Claims shall be paid by the Reorganized Debtor, up to the Allowed amount of such Claim, on or before the date which is six (6) months following the Effective Date.

The Class 1 Priority Tax Claims are Impaired, and the Holders of Allowed Claims in Class 1 are entitled to vote.

7.2    General Unsecured Claims.  (Class 2) Class 2 consists of all Allowed General Unsecured Claims against Higgins AG. Except to the extent that a Holder of an Allowed General Unsecured Claim and Higgins AG or Reorganized Higgins AG agree to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive (1) its Pro Rata share of the GUC Distribution Pool, in full and final satisfaction of such claims, paid annually, starting on the date that is one year following the Effective Date and ending on the date which is thirty-six (36) months following the Effective Date, and (ii) its Pro Rata share of the Settlement Payment, *provided*, that any Holder of an Allowed General Unsecured Claims who, on the Ballot, opts out of the releases set forth in sections 8.4 and 12.7 of the Plan, shall not receive its share of the Settlement Payment. The amount of the Settlement Payment shall be reduced by the amounts that would have been payable to those Holders had such Holders not opted out.  For the avoidance of

doubt, The McLendon Company, Chase McLendon, and Tri-State Theaters shall not receive any distribution on account of their General Unsecured Claims against the Debtor.

The Class 2 Claims of the General Unsecured Creditors are Impaired, and the Holders of Allowed Claims in Class 2 are entitled to vote.

7.3     Insider Claims.  (Class 3) Class 3 consists of Holders of Claims against the Debtor held by Insiders, as such term is defined herein and in the Bankruptcy Code. Each Holder of an Allowed Class 3 Claim shall waive its claims against the Debtor and will receive no distributions through the Debtor's Plan.

The Class 3 Insider Claims are Impaired under the Plan, and the Holders of Allowed Claims in Class 3 are entitled to vote.

7.4     Equity Interests in Higgins AG, LLC.  (Class 4) Class 4 consists of the Equity Interests in Higgins AG. Holders of Equity Interests in Higgins AG shall retain their interests in Higgins AG.

The Class 4 Claims of Equity Interests in Higgins AG are Unimpaired, and they are not entitled to vote.

## ARTICLE VIII
## MEANS OF IMPLEMENTING THE PLAN

8.1     Continued Existence of the Reorganized Debtor.  Except as otherwise provided in this Plan, the Debtor shall continue to exist after the Effective Date as the Reorganized Debtor in accordance with the applicable laws of the state of Florida. On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement, the Reorganized Debtor may, in its sole discretion, take such action as permitted by applicable law and the Reorganized Debtor's organizational documents as the Reorganized Debtor may determine is reasonable and appropriate.

8.2     Lease of Assets.  The Reorganized Debtor will lease equipment described as a Forklift, Type LK 8M22, Serial Number LT 1276, Model Year 2000 (the "Forklift"), to generate income to fund payments to creditors under the Plan for a period of thirty-six (36) months. The Equipment Lease Agreement, attached hereto as **Exhibit D**, is projected to generate income of $850.00 per month for the Debtor, for a total amount of $30,600.00 over the course of the Plan repayment period.

8.3     Sale of Assets.  The Debtor will employ Rosen Systems, Inc. as Auctioneer to facilitate the sale of the Debtor's small equipment and furniture assets stored at the Greenville, Texas Shop and Container, as listed in the Schedules. The proceeds from the sale of these assets shall be used to pay creditors in accordance with the terms of the Plan.

8.4     Settlement with McLendon Parties

    a.   Waiver of Claims and No Recovery. The McLendon Company, Chase McLendon, Bart McLendon, and Tri-State Theaters (the "McLendon Parties")

shall release and waive any Claims against the Debtor and shall not receive any distributions from the Debtor.

b.  Settlement Payment. As additional consideration to their waivers of their Claims totaling $1,420,162.30, the McLendon Parties shall provide additional Cash in the amount of $30,000.00 (the "Settlement Payment") on or before the Effective Date.

c.  Insurance Coverage. Further, the McLendon Parties shall further pay for and maintain insurance coverage for the Forklift during the pendency of the Plan repayment period.

d.  Release of Estate Causes of Action. In exchange for the consideration set forth in this section 8.4, the Debtor and the McLendon Parties agree to the following releases: on the Effective Date, the Debtor shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action, and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising at law, in equity, or otherwise, including any claims or causes of action under the Bankruptcy Code or other applicable law, which it has or may have against the McLendon Parties and any of their respective members, managers, officers, directors, employees, partners, affiliates, funds, advisors, attorneys, agents and representatives and their respective property. On the Effective Date, the McLendon Parties shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, at law, in equity or otherwise, including any claims or causes of action under the Bankruptcy Code or other applicable law which it has or may have against the Debtor, and each of its respective members, managers, officers, directors, employees, partners, affiliates, funds, advisors, attorneys, agents, and representatives and its respective property.

e.  Consent and Opt-Out. As set forth more fully on the Ballot, all Holders of General Unsecured Claims against the Debtor shall be deemed to have consented to provisions of Article XII of the Plan, including the third-party release described in section 12.7 of the Plan, regardless of whether a Ballot has been submitted, unless the Holder of Claim specifically checks the box on the Ballot to opt-out of the third-party release, *provided, however*, any Holder of a Claim who elects to opt-out on its ballot shall not receive any distribution from the Settlement Payment. In full and final satisfaction and release of any and all Causes of Action that could be asserted against the McLendon Parties by the Holder of a General Unsecured Claim against the Debtor, the Settlement

**DEBTOR'S AMENDED PLAN OF REORGANIZATION**                                    **Page 7**

Payment shall be distributed Pro Rata to the Holders of General Unsecured Claims against the Debtor who have not checked the box on the Ballot to opt-out of the third-party release provided for in section 12.7 of the Plan, *provided*, however, that no portion of the Settlement Payment shall be distributed to the McLendon Parties. Any Holder of a General Unsecured Claim who has checked the box on the Ballot to opt-out of the third-party release shall be deemed to have forfeited its right to its share of the applicable Settlement Payment.

8.5    <u>Payment Administrator</u>.  Notwithstanding the provisions of 11 U.S.C. § 1194(b), the Reorganized Debtor shall be the payment administrator and shall be the party responsible for distributing all payments outlined and specified in the Plan.

8.6    <u>Compromises and Settlements</u>.  Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distribution, and other benefits provided in the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of certain Claims and Causes of Action arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and all other compromises or settlements provided in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, Creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness. To the extent necessary to effectuate and implement the compromises and releases contained in this Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein. More specifically, and without limiting this provision, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 to settle any Claims and the treatment provided for them in this Plan.

8.7    <u>Releases by the Debtor</u>.  Releases by the Debtor are set forth in Section 12.6 of this Plan and are incorporated herein by this reference.

8.8    <u>Releases by Holders of Claims and Interests</u>. Releases by Holders of Claims and Interests are set forth in Section 12.7 of this Plan and are incorporated herein by this reference.

8.9    <u>Intentionally Omitted.</u>

8.10    <u>Corporate Action</u>.    The entry of the Confirmation Order shall constitute authorization for the Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation. The management of the Reorganized Debtor is authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith in the name of and on behalf of the Debtor and Reorganized Debtor.

8.11    Documents.  All documents necessary for the implementation of this Plan shall be executed by all necessary parties in interest on or before the Effective Date unless an earlier date is provided for a particular document or documents under this Plan.  To the extent that the parties in interest herein are unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Bankruptcy Court for determination.  Upon the Effective Date, or as soon as practicable thereafter, the Bankruptcy Court shall have resolved said issues, and all such documents shall be binding on the Debtor, the Creditors, and all other parties hereto.

8.12    Post-Effective Date Management.  The Reorganized Debtor shall continue to exist after the Effective Date in accordance with the applicable laws of the State of Florida, in which it is incorporated, for the purposes of operating as a going concern and satisfying its obligations under the Plan. The Reorganized Debtor shall be managed by Chase McLendon, Bart McLendon, and Barbara Wagenhauser.

8.13    Preservation of Causes of Action and Rights.  All Causes of Action, rights of setoff and other legal and equitable defenses of the Debtor or its Estate are preserved unless expressly released, waived, or relinquished under the Plan or the Confirmation Order and shall vest in the Reorganized Debtor. No Person may rely on the absence of a specific reference in the Plan to any Cause of Action against them as an indication that a Cause of Action will not be pursued against them.

**Further, unless expressly released by the Plan or by an order of the Bankruptcy Court, any and all such claims and Causes of Action against third parties are specifically reserved, including but not limited to any such claims or Causes of Action relating to any counterclaims, demands, controversies, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, legal proceedings, equitable proceedings, and executions of any nature, type, or description, avoidance actions, preference actions, fraudulent transfer actions, strong-arm power actions, state law fraudulent transfer actions, improper assignment of interest, negligence, gross negligence, willful misconduct, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, breach of fiduciary duty, conversion, aiding and abetting, civil conspiracy, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful recoupment, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies, equitable subordination, debt re-characterization, substantive consolidation, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of any alleged fiduciary duty, breach of any special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, malpractice, at law or in equity, in contract, in tort, or otherwise, known or unknown, suspected or unsuspected.**

Unless expressly released by the Plan or by an order of the Bankruptcy Court, the Debtor may hold claims against a Holder of a Claim or Equity Interest, including but not limited to, the following claims and Causes of Action, all of which shall be preserved:

- Preference claims under section 547 of the Bankruptcy Code;

**DEBTOR'S AMENDED PLAN OF REORGANIZATION**                                **Page 9**

- Fraudulent transfer and other avoidance claims arising under section 506, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and various state laws;

- Unauthorized post-petition transfer claims including, without limitation, claims under section 549 of the Bankruptcy Code;

- Claims and Causes of Action asserted in current litigation, whether commenced pre- or post-petition; and

- Counterclaims asserted in current litigation.

8.14   <u>Conditions to Effective Date</u>.   The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied in accordance with the terms hereof:

(a)   The Confirmation Order shall have become a Final Order; and
(b)   All actions, documents, and agreements necessary to implement the Plan shall have been effected or executed, including the lease of the Forklift in <u>Section 8.2</u>.

8.15   <u>Waiver of Conditions Precedent</u>.  Except as otherwise provided herein, any action required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. The Debtor reserves the right to waive the occurrence of the conditions precedent set forth in <u>Section 8.14</u> hereof or to modify any of such conditions precedent. Any such written waiver or such conditions precedent may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any other formal action other than proceeding to consummate the Plan.

**ARTICLE IX**
**PROVISIONS FOR THE ASSUMPTION AND REJECTION OF EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES**

9.1   <u>General Rejection of Executory Contracts and Leases</u>.   Unless (i) otherwise specified herein, (ii) previously assumed by order of the Bankruptcy Court, or (iii) designated and identified pursuant to any sale agreement approved by the Bankruptcy Court, all executory contracts and unexpired leases are hereby rejected.

9.2   <u>Claims for Damages</u>.   Unless otherwise specified in a separate Final Order of the Bankruptcy Court, any Claim based upon rejection of an executory contract or unexpired lease under the Plan must be Filed with the Bankruptcy Court and served on the Reorganized Debtor such that the Claim is actually received within thirty (30) days of the Effective Date. Notwithstanding the foregoing, and for the sake of clarity, nothing in this section is meant to modify any prior Order of the Bankruptcy Court related to a rejection of an executory contract or unexpired lease, and to the extent a date is specified in such order, such date shall be the deadline by which Claims based upon rejection must be Filed.  All Allowed Claims for rejection damages,

unless otherwise specifically provided for or addressed in this Plan, shall be treated as Class 2 General Unsecured Claims. Any Claim not Filed within such time will be forever barred from assertion against the Debtor, Reorganized Debtor, and its Estate.

# ARTICLE X
## RESOLUTION OF UNDETERMINED CLAIMS

10.1    Standing.  In addition to all other parties that may otherwise have standing to object to claims, the Reorganized Debtor shall have specific standing to object to the allowance of said Claims.

10.2    Effect of Bar Date.  In accordance with Bankruptcy Rule 3003(c), any entity, Person, or Creditor who: (i) was not listed in the Schedules, (ii) holds a Contingent Claim, (iii) holds an Unliquidated Claim, or (iv) holds a Disputed Claim, and did not file a proof of Claim before the Bar Date shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

10.3    Amendments to Claims; Claims Filed After the Confirmation Date.    Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be Filed after the Confirmation Date without prior authorization of the Bankruptcy Court.  Except as otherwise provided in the Plan, any Claim Filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without the need for any action by the Reorganized Debtor.

10.4    Objection Deadline.  Within ninety (90) days from the Effective Date, unless such date is extended by order of the Bankruptcy Court after notice and hearing, the Reorganized Debtor may file with the Bankruptcy Court objections to Claims and Interests and shall serve a copy of each such objection upon the Holder of the Claim or interest to which such objection pertains. Unless arising from an Avoidance Action, any proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Undetermined Claim may be litigated to Final Order. The Reorganized Debtor may compromise and settle any Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of an Undetermined Claim after the Effective Date. Nothing in this Plan extends the Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late-filed Claim than such Creditor otherwise has.  Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall litigate to judgment, settle, or withdraw objections to contested Claims.

10.5    Creditor Response to Objection.  With respect to any objection to a Claim when such objection is Filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Reorganized Debtor and the objecting party no later than thirty (30) days from the date of service of any such objection.  Failure to file and serve such a response within thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor.  Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

10.6    No Payment Pending Allowance.  Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed or is an Undetermined Claim, then no payment or distribution hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes and Allowed Claim.

10.7    Allowance of Claims.  At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan.  Such distributions shall be made in the manner provided for by this Plan and the terms of any Final Order of the Court with respect to such Allowed Claim.  In the event that the Reorganized Debtor makes any distributions to Creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will commence and be due and payable on the first (1) annual payment date for General Unsecured Claims, or (2) the first Administrative Claim Quarterly Payment for Administrative and Professional Claims, following the date of the order allowing such Claim, and shall be re-amortized to equal an amount sufficient to fully pay the Allowed Claim.

10.8    Estimation of Claims.  The Debtor or the Reorganized Debtor may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to 11 U.S.C. § 502(c), regardless of whether the Debtor or the Reorganized Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates an Undetermined Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated subsequently and compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE XI
## DISTRIBUTION PROCEDURES

11.1    Record Date for Claims.  The record date for Distributions to Allowed Claims under the Plan shall be the date the Bankruptcy Court enters its order approving the Plan. For purposes of Distribution to Holders of Allowed Claims, the Reorganized Debtor will rely on the Claims Register maintained by the Bankruptcy Court except to the extent a notice of transfer of Claim has been Filed with the Bankruptcy Court prior to the record date pursuant to Bankruptcy Rule 3001.

11.2    Form of Distributions.  Any Cash payment to be made pursuant to the Plan may be made by check or wire transfer at the option of the Reorganized Debtor.

11.3    Conditions to Distributions; Warranty of Entitlement.  Each and every Creditor who receives and accepts a Distribution under the Plan on account of an Allowed Claim is deemed to have warranted to the Reorganized Debtor that such Creditor is the lawful Holder of the Allowed

Claim, is authorized to receive the Distribution, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can, in any way, defeat or modify the right of the Creditor to receive the Distribution.

11.4    <u>Withholding Taxes</u>.  In connection with this Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements validly imposed on them by any governmental authority, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, payment of applicable withholding taxes from a Distribution, and conditioning a Distribution upon receipt of necessary tax reporting information from the Holder of the Claim.

11.5    <u>Setoffs</u>.  Except as otherwise expressly provided in the Plan and pursuant to Sections 502(d) or 553 of the Bankruptcy Code or any applicable non-bankruptcy law, the Reorganized Debtor may, upon application and approval by the Bankruptcy Court, setoff against any Distribution to be made pursuant to the Plan on account of an Allowed Claim any claims, rights, or Causes of Action held by the Reorganized Debtor against the Holder of the Allowed Claim or in relation to the Allowed Claim, *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Reorganized Debtor of any such claims, rights, or Causes of Action. If the Reorganized Debtor fails to setoff against a Claim and seeks to collect from the Holder of such Claim after Distribution to that Holder pursuant to the Plan, the Reorganized Debtor shall be entitled to full recovery on the claims of the Debtor or its Estate, if any, against the Holder of such Claim.

11.6    <u>Rounding</u>.  Where the calculation of a distribution results in a fraction of a cent owing, the calculation shall be rounded down to the nearest whole cent for purposes of paying (or reserving) the Distribution.

11.7    *De Minimis* <u>Distributions</u>.  Notwithstanding any provision of the Plan to the contrary, no Distribution of less than five dollars ($5.00) shall be made on an Allowed Claim from the Reorganized Debtor, unless such Distribution shall be a final Distribution.

11.8    <u>Undeliverable and Unclaimed Distributions</u>.  Any Person that is entitled to receive a Distribution of Cash under the Plan but fails to cash a check within ninety (90) days of its issuance shall be entitled to receive a reissued check from the Reorganized Debtor for the amount of the original check, without any interest, if such Person requests the Reorganized Debtor to reissue such check and provides such documentation as may be requested to verify that such Person is entitled to such check within one year of the check's issuance date.  After the expiration of the applicable deadline to request a check to be reissued, the Person who fails to cash a check within ninety (90) days of its issuance shall not be entitled to receive any Distribution under the Plan on account of the Claim that was attempted to be paid. If the Distribution to any Holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable, no further Distributions will be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's current address, *provided*, *however*, a claim for an undeliverable Distribution must be made within one hundred eighty (180) days following the date of issuance of the original Distribution. After such date, all unclaimed property shall revert to the Reorganized Debtor for further disbursement

in accordance with the Plan, and the Claim of any Holder or successor to such Holder with respect to such property shall be discharged, disallowed, and forever barred notwithstanding any federal or state escheatment laws to the contrary. The Reorganized Debtor has no obligation to independently undertake any investigation to determine the whereabouts of any Holder of an Allowed Claim.

11.9    Disputed Distributions.  No Distribution will be made on account of a Disputed Claim unless and until it becomes Allowed.  Upon a request for estimation, the Bankruptcy Court will determine what amount of Cash from the initial and subsequent Distributions is sufficient to reserve on account of any Disputed Claim not otherwise treated in the Plan, pursuant to Section 502 of the Bankruptcy Code or applicable law, in which case, the amount so determined by the Bankruptcy Court shall be deemed the Allowed amount of such Disputed Claim for purposes of the Plan or, in lieu thereof, the Bankruptcy Court will determine the maximum amount to which such Claim may be ultimately Allowed.  Upon motion by a party in interest, the Bankruptcy Court may determine the appropriate amount of any reserves required in connection with a Disputed Claim.  In the event that a dispute arises as to the rightful owner of an Allowed Claim, or a Distribution thereon, the Reorganized Debtor may either (a) establish a reserve account for deposits of Disputed Claims until a determination is made as to the rightful owner of the Distribution by the Bankruptcy Court or by written agreement between each of the Persons making claim to the Distribution, or (b) interplead the Distribution into the registry of the Bankruptcy Court or such other court having jurisdiction over the Disputed Distribution and the Persons making claim to such Distribution, reserving the right to assert any and all claims that the Reorganized Debtor may have in relation to such interpleader action, *provided, however,* that once segregated or interplead, interest shall cease to accrue on an Allowed Claim.

## ARTICLE XII
## EFFECTS OF CONFIRMATION OF PLAN, INJUNCTION, AND EXCULPATIONS

12.1    Notice of the Effective Date.  On or before ten (10) Business Days after occurrence of the Effective Date, the Reorganized Debtor shall mail or cause to be mailed to all Holders of Claims and Equity Interests a notice that informs such Holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; (c) the Administrative Claim Bar Date; (d) Professional Claim Bar Date; and (e) such other matters that the Reorganized Debtor deems appropriate.

12.2    Binding Effect of Plan.  Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtor, the Reorganized Debtor, all Creditors, all Equity Interest Holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan.

12.3    Discharge of Debtor.  Except as otherwise provided herein or in the Confirmation Order, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor or any of its assets or properties; and except as otherwise provided herein, upon the Effective Date,

the Debtor shall be deemed discharged and released upon the completion of all payments specified in the Plan to the extent permitted by Sections 1192 and 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is Filed or deemed Filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of the Claim based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor. Except as provided herein, pursuant to Section 524 of the Bankruptcy Code, such discharge shall void any judgment against Higgins AG at any time obtained to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against either Higgins AG or the property of the Debtor, to the extent it relates to a Claim discharged.

    12.4    Injunction Against Interference with Plan. Upon the Effective Date, all Holders of Claims, all Holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees, and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan.

    12.5    Exculpations. Neither the Debtor's professionals, nor any of its respective present officers, employees, agents, representatives, advisors, affiliates, underwriters, or investment bankers, nor any other professional persons employed by any of them (collectively, the "Exculpated Parties"), shall have or incur any liability to any Person for any act taken or omission in connection with or related to formulating, negotiating, implementing, confirming, or consummating the Plan, except for willful misconduct. The Exculpated Parties shall have no liability, except for willful misconduct, to the Debtor, any Creditor, any Equity Interest Holder, and any other party in interest in the Bankruptcy Case, or any other Person for actions taken or not taken under the Plan, in connection herewith or with respect thereto, or arising out of their administration of the Plan or the property to be distributed under the Plan including, without limitation, failure to obtain Confirmation or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

    12.6    Releases by the Debtor. Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtor, the Reorganized Debtor, and its Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, that the Debtor, the Reorganized Debtor, or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of court restructuring efforts, intercompany transactions, the Chapter 11 Case, the Disclosure Statement, the Plan (including, for the avoidance of doubt, any Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document

created or entered into in connection with the Chapter 11 Case, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article XII by the Debtor, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Article VII is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good faith settlement and compromise of such Claims; (3) in the best interests of the Debtor and all Holders of Interests and Claims; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtor or Reorganized Debtor asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

**12.7    Releases by Holders of Claims and Interests. Notwithstanding anything contained in this Plan to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Claims and Causes of Action, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtor, the Reorganized Debtor, or its Estate, that such entity would have been legally entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Reorganized Debtor, or its Estate or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between or among the Debtor and any Released Party, the ownership and/or operation of the Debtor by any Released Party or the distribution of any Cash or other property of the Debtor to any Released Party, the assertion or enforcement of rights or remedies against the Debtor, the Debtor's in- or out-of-court restructuring efforts, any Avoidance Actions, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Plan, any other Definitive Documents, or any restructuring related transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan**

or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Plan, before or during the Chapter 11 Case, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of the Effective Date, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any restructuring related transaction, or any document, instrument, or agreement executed to implement the Plan, including any Claim or obligation arising under the Plan.

In order to avoid being deemed a Releasing Party and/or a Released Party, as applicable, and thereby granting and receiving the releases set forth in Article XII of the Plan, a creditor casting a Ballot for acceptance or rejection of the Plan must indicate its intent to make the Opt-Out Election by checking the "OPT-OUT" box on its Ballot. Except as otherwise set forth herein, a party that is entitled to vote on the Plan and who votes to accept the Plan will be deemed to be a Releasing Party unless it unambiguously makes the Opt-Out Election. Creditors and other parties in interest who fail to take such action shall be deemed to have consented to the Third-Party Release contained in Article XII of the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtor and its Estate; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

### ARTICLE XIII
### MODIFICATION OF THE PLAN

13.1    Amendments Prior to Confirmation Date.  The Debtor may modify or amend the Plan prior to Confirmation, and the Plan, as modified or amended, shall become the new Plan of Reorganization.

13.2    Amendments After Confirmation Date.  The Debtor may modify the Plan before its substantial consummation, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, and the Bankruptcy Court, after notice and hearing, confirms the Plan, as modified. Further, in the event that the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), then

the Reorganized Debtor may (subject to the restrictions specified in 11 U.S.C. § 1193(c)) modify the plan after substantial consummation.

13.3    <u>Effect on Claims</u>.  A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

## ARTICLE XIV
## <u>RETENTION OF JURISDICTION</u>

14.1    <u>Purposes</u>.  Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case for the following purposes:

    i.        to determine any and all objections to the allowance of Claims or interests, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest;

    ii.       to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with Section 503(b) of the Bankruptcy Code or this Plan;

    iii.      to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which either of the Debtor is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

    iv.      to hear and determine any and all actions initiated by the Reorganized Debtor, whether by motion, complaint, or otherwise;

    v.       to determine any and all applications, motions, adversary proceedings, and contested matters pending before the Bankruptcy Court on the Confirmation Date or Filed or instituted after the Confirmation Date;

    vi.      to modify this Plan or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, this Plan or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

    vii.     to ensure that the distribution is accomplished in accordance with the provisions of this Plan;

    viii.    to allow, disallow, determine, liquidate, or estimate any Claim or interest and to enter or enforce any Order requiring the filing of any such Claim or interest before a particular date;

**DEBTOR'S AMENDED PLAN OF REORGANIZATION**                                      **Page 18**

ix.     to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement, and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate orders to protect the Debtor from creditor actions;

x.      to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

xi.     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, or vacated;

xii.    to determine such other matters as may arise in connection with this Plan or the Confirmation Order;

xiii.   to enforce all orders, judgments, injunctions, and rulings entered in connection with the Bankruptcy Case;

xiv.    to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

xv.     to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

xvi.    to enter a Final Order and final decree closing the Bankruptcy Case.

14.2    <u>Exclusive Jurisdiction</u>.  The Bankruptcy Court shall have exclusive jurisdiction to resolve all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation, or administration of this Plan, or the Confirmation Order, and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

14.3    <u>Abstention</u>.  If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Bankruptcy Case, including the matters set forth in this Article XIV, this Article XIV shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**ARTICLE XV**
**<u>GENERAL PROVISIONS</u>**

15.1    <u>Certain Rights Unaffected</u>.  Except as otherwise provided herein, any rights or obligations which the Debtor's Creditors may have among themselves as to their respective Claims or the relative priority or subordination thereof are unaffected by this Plan.

15.2    <u>Incorporation of Valuation Motion</u>.  To the extent necessary to effectuate and implement the provisions of this Plan, the Plan shall be deemed to constitute a motion for valuation

under the Bankruptcy Code, including the value of any lien, security interest, or encumbrance treated by this Plan, *provided, however,* that nothing in this Plan shall alter any valuation ordered by Final Order of the Bankruptcy Court in the Bankruptcy Case.

15.3     Automatic Stay.  The automatic stay provided in Section 362 of the Bankruptcy Code shall remain in effect through the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to a separate order and shall terminate on the Effective Date.

15.4     Reservation of Rights.  The Plan shall have no force or effect unless and until the Effective Date occurs.  Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtor with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

15.5     Rights Under 1191(b).  If all of the applicable requirements of section 1129(a) of the Bankruptcy Code, other than paragraphs (8), (10), and (15) of that section, are met, the Debtor will seek confirmation under the cram down provisions of Section 1191(b) of the Bankruptcy Code and hereby gives notice of intent to invoke the cram down provisions of Section 1191(b) in that event.

15.6     Headings.  The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions, or interpretations of this Plan.

15.7     Severability.   If any term or provision in this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

15.8     Governing Law.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements, and instruments executed in connection with this Plan (except to the extent such documents, agreements, and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

15.9     Successors and Assigns.  The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

Dated: May 14, 2023

**HIGGINS AG, LLC**

*/s/ Chase McLendon*

By: Chase McLendon,
Its Manager


OF COUNSEL

*/s/ Megan F. Clontz*
Jason P. Kathman
Texas Bar No. 24070036
Megan F. Clontz
Texas Bar No. 24069703
Lindsay Doman (admitted Pro Hac Vice)
Minnesota Bar No. 0401626
SPENCER FANE LLP
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email: jkathman@spencerfane.com
Email: mclontz@spencerfane.com
Email: ldoman@spencerfane.com

**COUNSEL FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**

Reorganized Higgins AG's Address for Notice:

Higgins AG, LLC
13101 Preston Road Suite 404
Dallas, Texas 75240

Counsel for Reorganized Higgins AG Address for Notice:

Jason P. Kathman
Megan F. Clontz
Spencer Fane LLP
5700 Granite Parkway, Suite 650
Plano, Texas 75024
Email: jkathman@spencerfane.com
Email: mclontz@spencerfane.com